IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACKLIN D.,[1] | ) |
|                Plaintiff, | ) |
| | ) No. 19 C 2361 |
|     v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Commissioner of Social Security,[2] | ) |
|                Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Jacklin D.'s application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Dkt. 8.] For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 20, Pl.'s Mem.] is granted, the Commissioner's cross-motion for summary judgment [dkt. 27, Def.'s Mot.] is denied, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

**BACKGROUND**

I.  **Procedural History**

On January 14, 2016, Plaintiff filed a claim for DIB, alleging disability beginning November 18, 2015. [Dkt. 12-1, R. 16.] Plaintiff's claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 25, 2017. [*Id.*] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [*Id.*] A vocational expert ("VE") also testified. [*Id.*] On April 4, 2018, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [*Id.* at 16-29.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [*Id.* at 1-7.]

II. **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [*Id.* at 18-23.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 18, 2015. [*Id.* at 18.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, obesity, asthma, and status post first right metatarsal osteotomy with recurrence. [*Id.*] The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [*Id.* at 19.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following additional limitations: never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; occasionally stooping, crouching, kneeling, and crawling;

and occasional rotation, flexion, and extension of the neck. [*Id.* at 20-23.] Additionally, the ALJ determined that Plaintiff requires the use of a hand-held assistive device for prolonged ambulation, must avoid concentrated exposure to irritants, such as fumes, odors, dusts, and gases, and must avoid all exposure to the use of dangerous moving machinery, and unprotected heights. [*Id.*] Further, the ALJ determined that Plaintiff also requires a sit/stand option that allows for performing work at a work station while sitting or standing, and changing positions no more than twice every hour (every thirty minutes). [*Id.*] At step four, the ALJ concluded that Plaintiff would be unable to perform her past relevant work as a home attendant. [*Id.* at 23.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [*Id.* at 23-24.]

## DISCUSSION

### I. Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a).

"A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide

4

some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

## II. Analysis

Plaintiff argues that the ALJ erred in weighing the medical opinion of her treating physician, erred in assessing Plaintiff's subjective symptom statements, and erred in concluding that a significant number of jobs existed in the national economy that Plaintiff could perform despite her limitations. [Pl.'s Mem at 6-15; dkt. 34, Pl.'s Reply at 1-7.] The Commissioner argues in opposition that the ALJ properly assessed the opinion evidence and appropriately discounted Plaintiff's treating physician's opinion. [Dkt. 28, Def.'s Mem. at 2-6.] Similarly, the Commissioner argues, the ALJ properly assessed Plaintiff's subjective symptom statements, supported her decision to discredit Plaintiff's testimony, and appropriately determined that a significant number of jobs existed in the national economy that Plaintiff could perform. [*Id.* at 6-11.] After reviewing the record and the briefs submitted by the parties, this Court agrees with Plaintiff that the ALJ erred in evaluating the medical opinion evidence of Plaintiff's treating physician and in assessing Plaintiff's subjective symptom statements. Because these errors warrant remand, the Court does not reach Plaintiff's additional arguments.

### A. Treating Physician's Opinion

A treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is "well-supported" by medical findings and "not inconsistent with the

other substantial evidence" in the record.[3] 20 C.F.R. § 404.1527(c); *see Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). More weight is given to the opinions of treating physicians because they are most familiar with the claimant's conditions and circumstances. *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016). If a treating physician's opinion is not given controlling weight, the ALJ must determine what weight it merits by considering the following factors: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; and (4) the consistency and supportability of the opinion. 20 C.F.R. §404.1527(c); *Gerstner*, 879 F.3d at 263. An ALJ "must offer good reasons" for giving a treating physician's opinion less than controlling weight. *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016). If the ALJ discounts the physician's opinion after considering these factors, the court "must allow that decision to stand so long as the ALJ minimally articulated his reasons—a very deferential standard that [the Seventh Circuit has] deemed lax." *Elder*, 529 F.3d at 415 (internal quotations omitted); *accord Fair v. Saul*, 853 F. App'x 17, 21 (7th Cir. 2021).

Plaintiff's treating physician, Dr. Abdulmassih Abdulmassih, completed a Physical Residual Functional Capacity questionnaire on July 19, 2017, which explained that he had treated Plaintiff since 2009, and described her diagnoses of sleep apnea, asthma, chronic back pain, type II diabetes, hyperlipidemia, and osteoarthritis which cause Plaintiff dizziness, blurred vision, abdominal pain, stiffness, tenderness, weakness, fatigue, muscle spasms, and numbness. [R. 842-46.] Dr. Abdulmassih described Plaintiff's back pain as chronic, and her sleep apnea as severe, resulting in difficulty breathing and an inability to sleep. [*Id.* at 842.] He described her condition

---

[3] Although the Social Security Administration has since modified its treating-physician rule, Plaintiff's application was filed in 2016, and at that time, "controlling weight" was to be given to the well supported opinion of a treating physician. *See* 20 C.F.R. § 404.1527(b)(2) (for applications filed before March 27, 2017); 20 C.F.R. § 404.1520c (for applications filed on or after March 27, 2017).

as complicated by depression, anxiety and insomnia, and concluded that she was incapable of tolerating even a "low stress" job "due to the severity of the pain." [*Id.* at 843.] Dr. Abdulmassih opined that Plaintiff could walk for a half-block before requiring a rest or experiencing severe pain, and that she could sit for 45 minutes at a time and stand for 10 minutes at a time, totaling less than two hours in an eight-hour day. [*Id.* at 843-44.] He also opined that Plaintiff could only rarely lift up to 10 pounds, would need to take unscheduled breaks of 15 minutes per hour during an eight-hour work day, and would require the ability to elevate her legs to a 90-degree angle for five to six hours in an eight-hour day. [*Id.* at 844.] Additionally, Dr. Abdulmassih opined that Plaintiff experienced "good days" and "bad days" that would likely result in her absence from work more than four days each month. [*Id.* at 845.] Finally, Dr. Abdulmassih identified April 1, 2009, as the earliest date that Plaintiff had experienced the symptoms and limitations that he described. [*Id*. at 846.]

The ALJ failed to state ***what*** weight, if any, that she assigned to Dr. Abdulmassih's opinion. [*See* R. 22.] Instead, she stated only that she declined to give it controlling weight because: (1) Dr. Abdulmassih's opinion that Plaintiff was unable to lift more than 10 pounds since 2009, even though she had worked a job requiring occasionally lifting up to 50 pounds until 2015, diminished the reliability of his assessment; and (2) Dr. Abdulmassih's opinion that Plaintiff requires elevating her legs for five to six hours per day was unsupported by the treatment record. [*See id*.] It was an omission to fail to articulate what weight the ALJ gave to Dr. Abdulmassih's opinion, and, additionally, the ALJ's terse analysis both fails to adequately discuss the regulatory factors and, in any case, relies on a rationale that is not sound. *See* C.F.R. §404.1527(c); *Scrogham*, 765 F.3d at 696; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

First, the ALJ's conclusion that Dr. Abdulmassih's assessment of Plaintiff's limitations contradicts her work history is based on incomplete and faulty logic. The ALJ concluded that Dr. Abdulmassih opined that Plaintiff could not lift more than 10 pounds since 2009 and then discredited him for it, but Dr. Abdulmassih did not state that Plaintiff was limited in this particular way since 2009. Instead, he stated that he had treated Plaintiff since 2009 and he identified April 1, 2009, as the earliest date that the description of any of Plaintiff's symptoms and limitations applied. [*See* R. 846.] The ALJ failed to consider whether Dr. Abdulmassih's reference to 2009 related to his assessment of any of the numerous other limitations he had observed in his eight years of treating Plaintiff and identified in the questionnaire. Likewise, the ALJ did not explain why she construed Dr. Abdulmassih's reference to 2009 to relate specifically to Plaintiff's lifting limitation versus any of the others that he had described. When an ALJ decides not to give controlling weight to a claimant's treating physician, the ALJ must provide a sound explanation for doing so, and here, the ALJ failed to do so. *See Scrogham*, 765 F.3d at 696; *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

Similarly, the ALJ failed to address a number of other physical findings throughout the report that could support Dr. Abdulmassih's assessment. As Plaintiff correctly observes, the record reflects Plaintiff's long history of moderate asthma exacerbations and obstructive sleep apnea. [*See, e.g.*, R. 459, 468, 473, 478 (noting five-year history of present illness), 483-84, 515, 517, 528-29 (noting five-year history of present illness), 532.] Likewise, the record reflects Plaintiff's chronic neck and back problems, including numbness, tingling, and decreased range of motion. [*See, e.g.*, R. 378, 382, 387 (noting five-year history of present illness), 391, 395-96, 408, 423, 451, 469 .] There is no indication from the ALJ's discussion that the ALJ considered any of these records in weighing Dr. Abdulmassih's opinion. "The ALJ must confront the evidence that

8

does not support her conclusion and *explain why that evidence was rejected*." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (emphasis added). The ALJ did not do so here.[4]

Second, notwithstanding the Commissioner's arguments, the record is not inconsistent with Dr. Abdulmassih's description of Plaintiff's need to elevate her legs, and the ALJ did not adequately explain why she thought otherwise. [*See* R. 22.] Although the ALJ acknowledged a treatment record from October 2017 instructing Plaintiff to elevate her legs, her conclusion that it was "not recommended until October 2017" suggests that she missed an earlier record from August 2017 directing the same thing. [*See* R. 22, 866, 881.] Further, despite these records, the ALJ concluded without adequate explanation that Plaintiff's treatment records were "not significant for frequent problems with lower extremity edema/swelling." [*Id.*] As Plaintiff correctly observes, however, in addition to these two references to the need for leg elevation, the record reflects Plaintiff's long history of leg and foot pain, as well as paresthesia to the lower extremity. [*See, e.g.*, R. 512, 534, 538, 543, 559, 564, 568, 573, 577, 587, 592, 596, 853, 857.]

To the extent that the Commissioner argues that records memorializing the recommendation of leg elevation were appropriately disregarded because they had not come from Dr. Abdulmassih, but rather from another of Plaintiff's treating physicians, this argument is unpersuasive for two reasons. First, the Commissioner may not defend the ALJ's decision on a ground that the ALJ did not rely on, and the ALJ did not assert this basis in support of her decision to discount Dr. Abdulmassih's opinion. *See Kastner*, 697 F.3d at 648.

---

[4] To the extent that the Commissioner argues that the ALJ properly discounted Dr. Abdulmassih's opinion in light of the mild to moderate objective medical findings, the argument is rejected since the ALJ did not rely on such a basis in reaching her decision. *See Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88).

Second, the Commissioner provides no support for the illogical notion that a treating physician's opinion that is *consistent* with another physician's treatment records is somehow nevertheless properly disregarded as "inconsistent with the record" just because it is not also in the treating physician's own reports. [*See* Def.'s Mem. at 2, 6-8.] *See also Herrmann v. Colvin*, 772 F.3d 1110, 1111 (7th Cir. 2014) ("The administrative law judge seems to have thought that a physician's evidence can be disregarded unless he has detailed notes to back it up and other physicians provide identical evidence even if they don't contradict him—in other words no credibility without corroboration. These are insufficient grounds for disbelieving the evidence of a qualified professional.").

Similarly, the ALJ fails to explain her conclusion that Plaintiff's treatment records were "not significant for frequent problems with lower extremity edema/swelling." [*See* R. 22.] "[T]he mere absence of detailed treatment notes, without more, is insufficient grounds for disbelieving the evidence of a qualified professional." *Brown v. Colvin*, 845 F.3d 247, 253 (7th Cir. 2016) (internal quotation omitted). And in this case, there *were* treatment records documenting Plaintiff's history of chronic leg and foot pain as well as the recommendations of leg elevation. [*See, e.g.*, R. 512, 534, 538, 543, 559, 564, 568, 573, 577, 587, 592, 596, 853, 857.] Not only did the ALJ fail to explain why she concluded the treatment notes did not support the assessed limitations, but she similarly failed to explain how evidence in the record was inconsistent with Dr. Abdulmassih's opinion in this regard.

Moreover, even if the single limitation of leg elevation had not been supported by the record, this would not address Plaintiff's numerous other limitations about which Dr. Abdulmassih opined, including walking, standing, and sitting, being off task, and needing unscheduled breaks and absences. [*See* R. 842-46.] A treating physician's opinion may contain several points, some

10

of which may be given controlling weight while others may not. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Michael M. v. Saul*, No. 18 C 6718, 2020 WL 374682, *6 (N.D. Ill. Jan. 23, 2020) ("Even if *part* of Dr. Schmid's statement involved an issue reserved to the Commissioner . . . , that did not entitle the ALJ to rely on that fact as a reason for rejecting *all* of his findings."). Accordingly, even if Dr. Abdulmassih's opinion on the issue of Plaintiff's need to elevate her legs was appropriately discounted, it was error for the ALJ to rely on that in discounting the remainder of his opinion. *See Reinass v. Saul*, 953 F.3d 461, 465-66 (7th Cir. 2020) (decision to discount treating physician opinion lacks substantial evidence where ALJ fails to support determination that opinion was inconsistent with record); *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) (substantial evidence standard is "not satisfied unless the ALJ has adequately supported his conclusions."); *Behrens v. Berryhill*, No. 16 C 5348, 2017 WL 4052372 (N.D. Ill. Sept. 13, 2017) (error to discount entirety of treating physician opinion based on inconsistency of records as to one aspect of Plaintiff's condition).

Finally, even assuming that there had been a reason to deny controlling weight as to Dr. Abdulmassih's opinion, the ALJ was "not permitted simply to discard it." *Scrogham*, 765 F.3d at 697. Rather, the ALJ was required to explicitly consider the details of the treatment relationship, and explain the weight, if any, that she gave to the opinion. *See Meuser*, 838 F.3d at 912; *Scrogham*, 765 F.3d at 697-98. Nevertheless, in declining to give Dr. Abdulmassih's opinion controlling weight, the ALJ did not address a number of the requisite factors including the extent, nature and length of the treating relationship, the frequency of examinations, and the physician's specialty. By failing to address these factors and by not confronting the evidence noted above that could be supportive of Dr. Abdulmassih's findings, the ALJ has not built "an accurate and logical

bridge" from the evidence to her conclusion, and remand is warranted. *Jeske*, 955 F.3d at 587 (internal quotation marks omitted); *Scrogham*, 765 F.3d at 697-98.

### B.    Plaintiff's Subjective Symptoms Statements

Plaintiff additionally argues that substantial evidence does not support the ALJ's subjective symptom analysis, and that the ALJ erred in assessing Plaintiff's statements and concluding that Plaintiff's symptoms were not as severe as she alleged. [Pl.'s Mem. at 11-14; Pl.'s Reply at 5-7.] Specifically, Plaintiff asserts that the ALJ failed to appropriately analyze the evidence in weighing Plaintiff's statements, instead relying on a combination of boilerplate language and a summary recitation of the objective evidence. [Pl.'s Mem. at 12-13; Pl.'s Reply at 5-6.] According to the Commissioner, however, the ALJ adequately articulated her reasoning in finding Plaintiff's subjective symptom statements unsupported by the record of conservative treatment and mild to moderate symptoms. [Def.'s Mem. at 6-8.] Here too, Plaintiff's arguments are well taken.

"[A]n ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *see also Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (explaining that patently wrong "means that the decision lacks any explanation or support"). An ALJ's credibility finding is afforded "special deference" and will be overturned only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)). However, when an ALJ's credibility "determination rests on 'objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision.'" *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *accord Schomas v. Colvin*, 732 F.3d 702, 708-09 (7th Cir. 2013). Further, "[T]he ALJ may not discredit a

claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562; *Clifford,* 227 F.3d at 871. In evaluating a claimant's subjective symptom statements, "[A]n ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); SSR 96-7p, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562; *accord Schomas*, 732 F.3d at 709.

The ALJ began her credibility assessment by summarizing Plaintiff's description of her symptoms and her daily life activities and reciting the agency's boilerplate language that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects" of her symptoms are "not entirely consistent" with the other evidence of record. [*See* R. at 20-21.] As Plaintiff correctly observes, the Seventh Circuit has routinely condemned this language as "meaningless boilerplate." *Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016); *accord Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), *as amended on reh'g in part* (May 12, 2010) ("The statement by a trier of fact that a witness's testimony is 'not *entirely* credible' yields no clue to what weight the trier of fact gave the testimony.")

The ALJ did not end her discussion there. [*See* Def.'s Mem. at 7.] She also recited the objective evidence relating to Plaintiff's back and neck symptomatology, which the ALJ described as mild to moderate, and the objective evidence relating to Plaintiff's right foot symptomatology, which the ALJ described as resulting in conservative treatment. [*See* R. at 21.] Upon this discussion, the ALJ concluded that she had "considered the effects of the subjective and objective evidence related to Plaintiff's back, neck and foot conditions" in discrediting Plaintiff's statements

and reaching an RFC decision which assessed Plaintiff as significantly less impaired than she had alleged. [*See id.*]

Notwithstanding the ALJ's description, however, the ALJ's discussion is based entirely on a listing of the objective evidence, and no substantive engagement either with it or with Plaintiff's subjective statements. [*See* R. at 21-22.] It was incumbent on the ALJ to carefully evaluate all of the evidence bearing on the severity of Plaintiff's pain and other subjective symptoms, and to give specific reasons for discounting her testimony about it. *See Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011). Without an adequate subjective symptom evaluation by the ALJ, "neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). In this case, the ALJ's subjective symptom analysis provides no connection between Plaintiff's testimony about her symptoms and the medical evidence in the record to support the ALJ's decision to discount Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms. *See id.*; *Scott*, 297 F.3d at 595.

Given the limited nature of the ALJ's discussion in discounting Plaintiff's testimony, Plaintiff additionally challenges the ALJ's conclusions that Plaintiff's foot condition had been treated with conservative care and that her asthma condition was well controlled, and the Commissioner responds in turn with arguments as to why she contends the ALJ's discussion of those things was appropriate. [*See* Pl.'s Mem. at 13; Def.'s Mem. at 7-8.] The ALJ's discussion of those conditions, however, provides no insight into why she thought that the medical records conflicted with any of Plaintiff's statements about her related limitations. [*See* R. 20-22.] It was insufficient to simply describe Plaintiff's testimony and her medical records; the ALJ was obliged to analyze them. *See Villano*, 556 F.3d at 562. It is well settled that if an adverse credibility

14

determination is based on inconsistencies between Plaintiff's statements and the other evidence in the record, the ALJ is required to identify and explain those inconsistencies. *See Zurawski*, 245 F.3d at 887; *Villano*, 556 F.3d at 562. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3P (S.S.A. Mar. 16, 2016), 2016 WL 1119029, *9. Without such a discussion, the ALJ's decision fails to include the requisite bridge from the evidence to her conclusion.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 20] is granted, and the Commissioner's motion for summary judgment [dkt. 27] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 3/16/22

_____
BETH W. JANTZ
United States Magistrate Judge